UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
CHARLES CARLSEN,

                    Plaintiff,

                                        MEMORANDUM & ORDER
          -against-                     13-CV-1164(JS)

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                    Defendant.
---------------------------------------X
APPEARANCES
For Plaintiff:      Charles E. Binder, Esq.
                    Law Offices of Harry J. Binder
                       and Charles E. Binder, P.C.
                    60 East 42nd Street, Suite 520
                    New York, NY 10165

For Defendant:      Loretta E. Lynch, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    271-A Cadman Plaza East, 7th Floor
                    Brooklyn, NY 11201

SEYBERT, District Judge:

          Plaintiff Charles Carlsen ("Plaintiff") commenced this

action pursuant to Section 205(g) of the Social Securities Act, as

amended, 42 U.S.C. § 405(g), challenging defendant the Commissioner

of Social Security's (the "Commissioner") denial of his application

for disability insurance benefits.  Presently before the Court are

Plaintiff's and the Commissioner's cross-motions for judgment on

the pleadings.  For the following reasons, the Commissioner's

motion is DENIED, Plaintiff's motion is GRANTED, and this matter

is REMANDED to the Commissioner for further consideration in accordance with this Memorandum and Order.

BACKGROUND

Plaintiff filed for Social Security Disability benefits in April 2010, alleging disability since April 1, 2008. (R. 142-43.) Plaintiff attributed his disability to injuries to his ankle and leg, as well as knee impairment, hypertensive cardiovascular disease, hypertension, other neurological disorders, and short-term memory problems. (R. 153.) After his application was denied on June 23, 2010 (R. 83-86), Plaintiff requested a hearing before an administrative law judge ("ALJ") (R. 45-46). The hearing took place on April 28, 2011 before ALJ Seymour Rayner. (R. 47-78.) Plaintiff was represented by counsel at the hearing and was the only witness to testify. (R. 49.)

The ALJ issued his decision on July 15, 2011, finding that Plaintiff is not disabled. (R. 22-30.) Plaintiff sought review of the ALJ's decision by the Appeals Council, (R. 177-80), and submitted additional evidence in support of his request (R. 285-95). On October 25, 2012, the Appeals Council denied Plaintiff's request for review. (R. 6-10.)

The Court's review of the administrative record will proceed as follows: First, the Court will summarize the relevant evidence that was presented to the ALJ; second, the Court will review the ALJ's findings and conclusions; third, the Court will

summarize the additional evidence submitted to the Appeals Council; and <u>finally</u>, the Court will review the Appeals Council's decision.

I.   <u>Evidence Presented to the ALJ</u>

A.   <u>Non-Medical Evidence</u>

Plaintiff was born on June 3, 1958 (R. 142) and obtained his GED in 1978.  (R. 154.)  Plaintiff is divorced with one child.  (R. 66.)  He currently resides with his ex-wife's mother and father and his twenty-year old daughter.  (R. 66-67.)

From 1981 to April 20, 2008, Plaintiff worked as a tractor-trailer driver.  (R. 155.)  His responsibilities included hooking up the trailer, driving it to a stop, releasing the trailer, and driving to an empty trailer to hook it up to the truck.  (R. 155.)  He typically traveled from Long Island, New York to Connecticut or Staten Island, New York.  (R. 155.)  Plaintiff's job required him to walk for approximately one hour, stand for one hour, sit for eight hours, and climb and reach for one hour.  (R. 156.)

Plaintiff testified that he worked as a truck driver for Waldbaum's until they closed their warehouse and laid off all of their employees in 2008.  (R. 51.)  Plaintiff further testified that he tried to get another job but potential employers would not hire him due to his injured left leg.  (R. 51.)  Plaintiff worked for another company in 2009, but he claims that he was fired because he could not physically handle the job.  (R. 53.)

Plaintiff testified that he experiences constant pain in his left ankle and that the pain increases with bad weather. (R. 56.) He stated that he cannot stand upright for any length of time and that he has to sit down after a short time because of the pain in his ankle. (R. 54.) He also stated that, on a "good day," he can walk for forty minutes without stopping and that he uses a cane all of the time. (R. 54-55.) Additionally, he stated that he cannot sit for long periods of time because he has blood in his spinal fluid. (R. 64.)

Plaintiff shops for food, goes to the barber, does some laundry, goes to the store, goes to a friend's house, and goes to the bank. (R. 67-72.) He combs his hair, shaves, and dresses himself. (R. 68.) He stated that he sometimes has problems with buttons and with holding things for any length of time due to the arthritis in his hands. (R. 61.) He stated that he is able to carry things that are thirty pounds or less but only ten pounds or less when his arthritis is active. (R. 62-63.) He also stated that he wears a complete leg brace from the ankle to the knee. (R. 65.) He takes Vicodin four times a day. (R. 65.)

B.  Medical Evidence

On July 7, 2008, Plaintiff visited Michael J. Fracchia, M.D. and Michael J. Suzzi Valli, RPA-C[1] of Long Island Bone &

---

[1] Certified registered physician's assistant.

Joint, L.L.P. for an evaluation of his left ankle pain. (R. 184-85.) Plaintiff presented at five-feet, eight-inches tall and 280 pounds. (R. 184.) He stated that he has had ankle pain since he twisted his ankle getting out of his truck on June 24, 2008. (R. 184.) The treatment notes describe Plaintiff's history of a left ankle fracture in 1984 following a motorcycle accident. (R. 184.) The notes reference Plaintiff's three ankle surgeries, the last of which resulted in a fusion of the ankle in 1991. (R. 184.) An examination of the left ankle revealed diffuse swelling and scars. (R. 184.) Plaintiff could not evert or invert his ankle. (R. 184.) He dorsiflexed about five degrees below neutral and plantar flexed about fifteen degrees. (R. 184.) There was tenderness to palpation, distal fibula laterally but no tenderness at the medial aspect of the ankle. (R. 185.) Decreased sensation was noted, which Plaintiff stated was unchanged compared to years ago. (R. 185.) Left ankle x-rays showed four screws intact, a fused ankle joint, an old non-union oblique fracture of the distal fibula shaft, and an old metatarsal shaft fracture. (R. 185.) No acute fractures or dislocations were noted. (R. 185.) The diagnosis was left ankle osteoarthritis and status post fusion. (R. 185.) Plaintiff's treatment plan was conservative, consisting of ice, elevation, and anti-inflammatories. (R. 185.)

Plaintiff returned to Dr. Fracchia and RPA Valli for a follow-up appointment on August 14, 2008. (R. 183.) He reported

that he had been given a prescription for a rocker bottom shoe, but never purchased one. (R. 183.) Plaintiff had taken Naproxen for about one week. (R. 183.) He stated that his pain had improved overall but he was still experiencing some pain in the left ankle. (R. 183.) The diagnosis was left ankle osteoarthritis and status post fusion and the treatment plan was to return as needed. (R. 183.)

On June 2, 2009, Plaintiff visited Natalya Laskina, RPA-C for a commercial driver fitness determination. (R. 200-03.) Plaintiff was five-feet, eight-inches tall and weighed 257 pounds. (R. 191.) RPA Laskina noted that Plaintiff had a history of left ankle reconstruction in 1984. (R. 191.) In the Medical Examination Report for Commercial Driver Fitness, RPA Laskina checked boxes indicating that Plaintiff did not have any missing or impaired leg or foot (R. 200), and that he did not have any limp, deformities, atrophy, or weakness in his lower limbs (R. 202). RPA Laskina certified that Plaintiff passed the driver fitness test, and qualified him to drive a truck for one year. (R. 202.)

On February 5, 2010, James E. Carlson, D.O. evaluated Plaintiff for the first time. (R. 217.) Plaintiff's chief complaints were hypertension and left ankle pain and his only medication was Lisinopril. (R. 217.) Plaintiff was referred to an orthopedic for his ankle pain. (R. 217.)

Plaintiff visited Dr. Carlson for a follow-up on March 11, 2010. (R. 216.) The chief complaint was non-insulin dependent diabetes. (R. 216.) The only musculoskeletal finding was the absence of compartment syndrome. (R. 216.) As a part of the diagnosis on this visit, Dr. Carlson gave Plaintiff an orthopedic referral. (R. 216.)

X-rays of the left ankle taken at Stony Brook Orthopedics on March 16, 2010 showed status post arthrodesis (fusion) of the left distal tibiotalar joint and distal tibia-fibula. (R. 224.) They also showed a non-united middle third fibular shaft fracture. (R. 224.) Four screws were noted, and no acute fractures were noted. (R. 224.)

On April 1, 2010, Plaintiff saw Dr. Carlson for another follow-up. (R. 215.) Plaintiff's reasons for the visit were ankle pain and blood pressure medication renewal. (R. 215.) He stated that his current pain medication was not helping to control his pain, and rated his pain between a seven and eight on a ten-point scale. Dr. Carlson diagnosed arthopathy and prescribed Vicodin. (R. 215.)

On April 5, 2010, orthopedic surgeon, Steven P. Sampson, M.D., examined Plaintiff at the University Hand Center at Stony Brook. (R. 225.) Plaintiff complained of worsening pain in his ankle over the past three months. (R. 225.) Plaintiff's history of ankle surgery, diabetes, and hypertension were noted. (R. 225.)

Dr. Sampson observed that Plaintiff was overweight and had an antalgic gait. (R. 225.) Plaintiff's subtalar range of motion measured at five to ten degrees and tenderness at the ankle joint was noted. (R. 225.) Dr. Sampson reported that X-rays showed a fused tibiotalar joint with screws and arthritis in the left ankle. (R. 225.) He ordered a CT-scan to evaluate the fusion, and prescribed a SAFO (silicone ankle foot brace). (R. 225.) In a follow-up with Dr. Sampson on June 8, 2010 Plaintiff stated that he had been wearing the ankle brace for three weeks. (R. 226.)

On June 9, 2010, Ammaji Manyam, M.D. performed an internal medicine examination of Plaintiff at the request of the Social Security Administration. (R. 231-34.) Plaintiff measured five-feet, eight-inches tall and weighed 260 pounds. (R. 232.) Plaintiff reported leg pain and difficulty walking and related his history of leg and ankle surgery. (R. 231.) He described the pain as being constant and throbbing in nature and rated it an eight out of ten without medication and a four out of ten with strong pain medication. (R. 231.) Dr. Manyam reported that Plaintiff's activities of daily living included cooking, cleaning, doing laundry, shopping, showering, dressing himself, and driving a car. (R. 232.) He also noted that Plaintiff walked with a gait and wore a leg brace on his left leg for stability, which mildly corrected the gait. (R. 232.) Plaintiff could walk on his heels and toes with some difficulty, he could squat, and his stance was

normal. (R. 232.) A left leg examination revealed varus deformity of the left foot, multiple scars on the left foot, and slight irregularity of the foot and lower leg because of the hardware inside. (R. 233.) Additionally, Dr. Manyam noted that the joints were stable and non-tender and there was no redness, heat, swelling, or effusion. (R. 233.) He diagnosed Plaintiff with left leg pain secondary to old injuries and secondary to old healed fractures with intact hardware. (R. 234.) Dr. Manyam opined that Plaintiff's prognosis was good and stated that he had no limitations for physical activities. (R. 234.)

On July 14, 2010 Plaintiff returned to Dr. Carlson for a diabetes follow-up and complained of increased pain in the leg. (R. 275.) His medications were Lisinopril and Vicodin. (R. 275.) Dr. Carlson diagnosed pain in joint involving his ankle and foot, and instructed Plaintiff to continue his current medications. (R. 275.)

Plaintiff again visited Dr. Carlson on August 31, 2010 and complained that he still had severe left ankle pain. (R. 276.) Dr. Carlson noted that Plaintiff was wearing a brace and that his left ankle appeared tender and swollen as compared to the right ankle. (R. 276.) Plaintiff was instructed to continue his pain medications. (R. 276.)

Prior to his hearing with the ALJ, Plaintiff submitted a questionnaire prepared by Dr. Carlson on March 14, 2011. (R.

264-72.)  The questionnaire indicated that Plaintiff first visited Dr. Carlson in February 2010 and continued to see him about every two to three months.  (R. 265.)  He diagnosed Plaintiff with a fracture of the ankle and reconstructive surgery and indicated that his prognosis was "guarded."  (R. 265.)  Dr. Carlson noted that Plaintiff's primary symptom was severe pain, limiting basic activities of daily life.  (R. 266.)  He described Plaintiff's pain as occurring daily and rated it between an eight and nine out of ten.  (R. 267.)  Dr. Carlson also indicated that motion and ambulation were precipitating factors that lead to the pain.  (R. 267.)

Additionally, Dr. Carlson opined that in an eight-hour day, Plaintiff could sit for zero to one hours, stand or walk for zero to one hours and that he would not be able to sit in a work setting without getting up and moving around every half hour.  (R. 267.)  Furthermore, Dr. Carlson indicated that Plaintiff could not lift or carry more than ten pounds occasionally, that he had significant limitations in doing repetitive reaching, handling, fingering, or lifting, and that he was significantly limited in using his fingers, hands and arms due to arthritis.  (R. 268-69.)  He also opined that Plaintiff's symptoms would likely increase in a competitive work environment, and that he was incapable of tolerating even low stress.  (R. 270.)  Plaintiff's treatment included Vicodin, physical therapy, and pain management.  (R. 269.)

Dr. Carlson indicated that the earliest date that the description of the symptoms and limitations in the questionnaire applied is March or April of 1984.  (R. 271.)

## II.  Decision of the ALJ

After reviewing all of the above evidence, the ALJ issued his decision on July 15, 2011, finding that Plaintiff is not disabled.  (R. 25-30.)  With respect to Plaintiff's complaints of hypertension, elevated blood sugar levels, short-term memory deficits, arthritis in his fingers, knee pain, and shoulder pain, the ALJ found that none constituted a medically determinable impairment.  (R. 27-28.)  The ALJ did find, however, that Plaintiff's osteoarthritis of the left ankle constituted a severe impairment.  (R. 27.)  However, the ALJ concluded that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment [that Plaintiff has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b)]."  (R. 28-29.)

The ALJ did not accord controlling weight to Dr. Carlson's opinion because he is not a specialist, his records failed to show any clinical abnormalities of the left ankle (except

for one examination), and his opinion was contradicted by Plaintiff's activities of daily living as well as the many years of work. (R. 29.) The ALJ also found that medical opinion existed that disagreed with the severity denoted in Dr. Carlson's opinion and accorded these opinions significant probative weight. (R. 29.)

Plaintiff sought review of this decision by the Appeals Council and Plaintiff submitted an additional report and questionnaire prepared by Dr. Leon Sultan, M.D. (R. 19.) The Appeals Counsel denied Plaintiff's appeal of the ALJ's determination, stating that they "found no reason under [the] rules to review the Administrative Law Judge's decision." (R. 6.) Thus, the ALJ's decision is considered the final decision of the Commissioner. (R. 6.)

III. Additional Evidence Submitted to the Appeals Council

As noted, after the ALJ's decision, Plaintiff submitted to the Appeals Council an additional report and questionnaire prepared by Dr. Sultan. (R. 285-95.) The report indicated that on September 20, 2011, Plaintiff visited Dr. Sultan for chronic pain and swelling in his left ankle. (R. 294.) Dr. Sultan noted that Plaintiff had a limp and used a brace for support when walking. (R. 294.) A physical examination revealed Plaintiff was five-feet, eight-inches tall and overweight at 240 pounds. (R. 295.) A left ankle examination showed mild swelling in the left ankle

and a difference in circumference between the left and right calf (14-1/2" for the left calf and 17" for the right calf). (R. 295.) Range of motion testing revealed that the left ankle position was frozen at approximately twenty degrees of plantar flexion without any active dorsiflexion or plantar flexion. (R. 295.) Dr. Sultan reported that Plaintiff has a permanent orthopedic disability and that this disability is related to his history of ankle injuries dating back to 1984. (R. 295.) He opined that Plaintiff's condition is permanent, interferes with his work as a tractor-trailer driver, and impedes his ability to walk, stand for prolonged periods of time, lift heavy items, carry items, squat, stoop, and crawl. (R. 295.) He stated that Plaintiff's permanent orthopedic disability prevents him from engaging in any type of gainful activity and that his prognosis is guarded to poor. (R. 295.) Dr. Sultan instructed Plaintiff to reduce the weight placed on the left ankle in order to relieve pressure. (R. 295.)

In the Multiple Impairment Questionnaire submitted to the Appeals Council, Dr. Sultan diagnosed plaintiff with post-traumatic left ankle osteoarthritis. (R. 285.) He characterized the nature of the pain as chronic and the frequency as daily. (R. 286-87.) The intensity of the pain was rated between a seven and eight on a ten-point scale. (R. 287.) Dr. Sultan opined that Plaintiff was able to sit two to three hours and stand or walk one to two hours in an eight-hour workday. (R. 287.) He reported

that Plaintiff could lift and carry up to ten pounds frequently, and up to twenty pounds occasionally. (R. 288.)  Furthermore, he opined that Plaintiff had no limitations using his hands, arms and fingers.  (R. 289.)  Dr. Sultan stated that Plaintiff's symptoms would likely increase if he was placed in a competitive work environment and that he was capable of tolerating moderate stress. (R. 289-90.)  In his best medical opinion, Dr. Sultan indicated that the earliest date the description of symptoms and limitations in the questionnaire applied is 1984.  (R. 291.)

DISCUSSION

I.   Standard of Review

In reviewing the ruling of the ALJ, this Court will not determine de novo whether Plaintiff is entitled to disability benefits.  Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ.  See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991). Instead, this Court must determine whether the ALJ's findings are supported by "substantial evidence in the record as a whole or are based on an erroneous legal standard." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (internal quotations marks and citation omitted), superseded by statute on other grounds, 20 C.F.R. § 404.1560.  If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists.  See Johnson v.

<u>Barnhart</u>, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u> (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). The substantial evidence test applies not only to the ALJ's findings of fact, but also to any inferences and conclusions of law drawn from such facts. <u>See</u> <u>id.</u>

To determine if substantial evidence exists to support the ALJ's findings, this Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences may be drawn." <u>See</u> <u>Brown v. Apfel</u>, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks and citation omitted). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

II. <u>Eligibility for Benefits</u>

A claimant must be disabled within the meaning of the Social Security Act (the "Act") to receive disability benefits. <u>See</u> <u>Shaw v. Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000); 42 U.S.C. § 423(a), (d). A claimant is disabled under the Act when he can show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A).  The claimant's impairment must be of "such
severity that he is not only unable to do his previous work but
cannot, considering his age, education, and work experience, engage
in any other kind of substantial gainful work which exists in the
national economy . . . ."  Id. § 423(d)(2)(A).

The Commissioner must apply a five-step analysis when
determining whether a claimant is disabled as defined by the Act.
See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); Petrie
v. Astrue, 412 F. App'x 401, 404 (2d Cir. 2011).  First, the
claimant must not be engaged in "substantial gainful activity."
20 C.F.R. § 404.1520(a)(4)(i).  Second, the claimant must prove
that he suffers from a severe impairment that significantly limits
his mental or physical ability to do basic work activities.  Id.
§ 404.1520(a)(4)(ii).  Third, the claimant must show that his
impairment is equivalent to one of the impairments listed in
Appendix 1 of the Regulations.  Id. § 404.1520(a)(4)(iii).  Fourth,
if his impairment or its equivalent is not listed in the Appendix,
the claimant must show that he does not have the residual
functional capacity ("RFC") to perform tasks required in his
previous employment.  Id. § 404.1520(a)(4)(iv).  Fifth, if the
claimant successfully makes these showings, the Commissioner must
determine if there is any other work within the national economy
that the claimant is able to perform.  Id. § 404.1520(a)(4)(v).
The claimant has the burden of proving the first four steps of the

analysis, while the Commissioner carries the burden of proof for the last step. See Shaw v. Chater, 221 F.3d at 132; Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009). "In making the required determinations, the Commissioner must consider: (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Boryk ex rel. Boryk v. Barnhart, No. 02-CV-2465, 2003 WL 22170596, at *8 (E.D.N.Y. Sept. 17, 2003) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

In the present case, the ALJ performed the above analysis, and his conclusions as to the first three steps do not appear to be in dispute. He found that Plaintiff had not engaged in substantial gainful activity since April 20, 2008 and that his left ankle condition constituted a severe impairment that limited his capacity to work. (R. 27.) The ALJ next determined that neither Plaintiff's impairment nor a medical equivalent was among those enumerated in Appendix 1. (R. 28.) The ALJ found that although Plaintiff was not capable of performing his past work, he had the RFC to perform a full range of light work. (R. 28.)

The Court must determine whether this final decision is supported by substantial evidence. With respect to the new

evidence submitted to the Appeals Council, it is deemed part of the record and will be considered by the Court when determining if there is substantial evidence to support the Commissioner's final decision.  See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) ("When the Appeals Council denies review after considering new evidence, we simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the Secretary.")

The parties have cross-moved for judgment on the pleadings and have raised several arguments in support of their respective motions.  The Court will address them in turn below.

A.    Treating Physician Rule

Plaintiff first argues that remand is required because the ALJ did not properly apply the treating physician rule to Dr. Carlson's medical opinions.  (Pl.'s Br., Docket Entry 11, at 7-13.)  The Commissioner counters that the ALJ properly assigned Dr. Carlson's opinions "little weight."  (Comm'r's Br., Docket Entry 13, at 17.)  As discussed below, because the ALJ did not identify what weight, if any, he ultimately gave to Dr. Carlson's opinions, this matter must be remanded to the Commissioner for further proceedings.

According the "treating physician rule," the medical opinions and reports of a claimant's treating physicians are to be

given "special evidentiary weight." Clark v. Comm'r of Soc. Sec.,
143 F.3d 115, 118 (2d Cir. 1998). Specifically, the regulations
state:

> Generally, we give more weight to opinions
> from your treating sources . . . . If we find
> that a treating source's opinion on the
> issue(s) of the nature and severity of your
> impairment(s) is well-supported by medically
> acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the
> other substantial evidence in your case
> record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2). When an ALJ does not accord
controlling weight to the medical opinion of a treating physician,
the ALJ "must consider various 'factors' to determine how much
weight to give to the opinion." Halloran v. Barnhart, 362 F.3d
28, 32 (2d Cir. 2004); see also Schnetzler v. Astrue, 533 F. Supp.
2d 272, 286 (E.D.N.Y. 2008). Such factors include:

> (1) the length of the treatment relationship
> and frequency of the examination; (2) the
> nature and extent of the treatment
> relationship; (3) the extent to which the
> opinion is supported by medical and laboratory
> findings; (4) the physician's consistency with
> the record as a whole; and (5) whether the
> physician is a specialist.

Schnetzler, 533 F. Supp. 2d at 286; see also 20 C.F.R.
§ 404.1527(d)(2); Halloran, 362 F.3d at 32.

Although it is clear that the ALJ did not give Dr.
Carlson's opinions "controlling weight," the ALJ never actually
specified what weight, if any, he ultimately gave to Dr. Carlson's

opinions. In contrast, the ALJ stated that he gave "substantial weight" to the opinion of the consultative examiner, Dr. Manyam, and "significant probative weight" to the "medical opinion . . . which disagrees with the severity denoted in [Dr. Carlson's] opinion."[2] (R. 29.) However, under the treating physician rule, the ALJ must "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion." Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The ALJ must do so because "even when a treating physician's opinion is not given <u>controlling</u> weight, the opinion is still entitled to <u>some</u> weight." <u>Clark v. Astrue</u>, No. 08-CV-10389, 2010 WL 3036489, at *4 (S.D.N.Y. Aug. 4, 2010) (emphasis in original) (citation omitted). Here, given the ALJ's criticism of Dr. Carlson's medical opinions, the Court could reasonably interpret the ALJ's decision to give no weight at all to Dr. Carlson's opinions, but it is impossible to definitively say. Thus, the ALJ's failure to identify the weight given to Dr. Carlson's opinions constitutes legal error requiring remand. <u>See</u>

---

[2] Plaintiff reads the ALJ's decision to give "significant probative weight" to Dr. Carlson's opinions but argues that the ALJ did not properly apply the treating physician rule due to the inconsistency between the ALJ affording the opinion "significant probative weight" and also finding that "none of the limitations from [Dr. Carlson] were acceptable." (Pl.'s Br. at 8.) However, the Court reads the ALJ's decision, as the Commissioner does, to give "significant probative weight" to the medical opinions that did not support Dr. Carlson's opinions. (Comm'r's Br. at 17 n.10.)

Norman v. Astrue, 912 F. Supp. 2d 33, 84 (S.D.N.Y. 2012) (remanding to the Commissioner because the ALJ did not "specify the weight ultimately given to [the treating physician's] opinions--even if that weight [was] not controlling nor a great amount"); Pierre v. Astrue, No. 09-CV-1864, 2010 WL 92921, at *9-10 (E.D.N.Y. Jan. 6, 2010) (noting that the regulations require the ALJ "to explain the degree of weight a treating source's opinion deserves when it is found not to be controlling" and remanding to the Commissioner because the ALJ, inter alia, "failed even to mention the weight [the treating physicians'] opinions were given (except to say it was not 'great')"). On remand, the ALJ should identify the degree of weight given to Dr. Carlson's opinions and explain why Dr. Carlson's opinions deserve such weight.

Because remand is required on this ground, the Court does not address Plaintiff's additional argument that the evidence submitted to the Appeals Council after the ALJ's decision warrants remand. However, since this evidence is now part of the record, see Perez, 77 F.3d at 46, the ALJ should consider such evidence on remand.

B. Credibility

Plaintiff also argues that the ALJ did not properly assess Plaintiff's credibility because the ALJ "failed to provide any analysis of how the [record] findings contradicted [Plaintiff's] allegations." (Pl.'s Br. at 15.)

The Court disagrees with Plaintiff that the ALJ failed to provide an analysis of Plaintiff's credibility. However, because the treating physician's opinion "is a significant part of the evidence that is weighed in determining credibility of a claimant under 20 C.F.R. § 404.1529," whether the ALJ properly assessed Plaintiff's credibility here "can only be properly assessed after the correct application of the treating physician rule." Garner v. Colvin, No. 13-CV-4358, 2014 WL 2936018, at *10 (S.D.N.Y. June 27, 2014) (remanding to the Commissioner and directing that "the issue of credibility . . . be revisited on remand, and evaluated in light of the proper application of the treating physician rule and [the factors for evaluating credibility]"). Accordingly, the ALJ should readdress the issue of credibility on remand after properly applying the treating physician rule.

Plaintiff additionally argues that the ALJ "applied the wrong legal standard when determining whether Plaintiff's testimony was credible." (Pl.'s Br. at 16.) As Plaintiff correctly notes, the Social Security regulations required the ALJ to first assess the credibility of Plaintiff's statements before determining Plaintiff's RFC. See Maldonado v. Comm'r of Social Sec., No. 12-CV-5297, 2014 WL 537564, at *17 (E.D.N.Y. Feb. 10, 2014) ("Applicable regulations required the ALJ to assess the credibility of [plaintiff's] statements and only then go on to

determine his RFC."); <u>Otero v. Colvin</u>, No. 12-CV-4757, 2013 WL 1148769, at *7 (E.D.N.Y. Mar. 19, 2013) ("[I]t makes little sense to decide on a claimant's RFC prior to assessing her credibility. It merely compounds the error to then use that RFC to conclude that a claimant's subjective complaints are unworthy of belief."). Plaintiff argues that the ALJ committed error here because he first determined Plaintiff's RFC, and then, as a result of that determination, concluded that Plaintiff's statements were not credible. Plaintiff bases this argument on the fact that the ALJ stated in his decision that he found Plaintiff's statements concerning his symptoms of pain "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 28-29.)

Although several judges in this district have remanded based on use of similar "shorthand credibility determination[s]," <u>Maldonado</u>, 2014 WL 537564, at *17 (collecting cases remanding based on use of "not credible to the extent they are inconsistent with RFC" formulation), this case is distinguishable because the ALJ went on to evaluate Plaintiff's credibility against other evidence in the record (<u>See</u> R. 29). Additionally, the ALJ stated that he would "make a finding on the credibility of [Plaintiff's] statements based on consideration of the entire case record." (R. 28.) Thus, while the ALJ uses formulaic language that has led other judges to remand, a review of the entire decision in this

case reveals that the ALJ here "did not actually employ an improper credibility determination in violation of the dictates of the Social Security regulations." Fiumano v. Colvin, No. 13-CV-2848, 2013 WL 5937002, at *9 n.9 (E.D.N.Y. Nov. 4, 2013) (internal quotation marks omitted) (finding that the ALJ did not apply incorrect credibility standard notwithstanding use of "to the extent that it is inconsistent with the above residual functional capacity" language because the entire decision indicated otherwise).

C.    Plaintiff's Obesity

Plaintiff also contends that the ALJ erred when he failed to consider Plaintiff's obesity and seeks remand "for further consideration of the combined impact of [Plaintiff's] left ankle impairment with his obesity." (Pl.'s Br. at 18.) The Court agrees that remand on this ground is also required.

Under SSR 02-1p, 2000 WL 628049 (Sept. 12, 2002), "[o]besity is not in and of itself a 'disability,' but the Social Security Administration considers it to be a medically determinable impairment, the effects of which should be considered at the various steps of the [ALJ's] evaluation process . . . ." Polynice v. Colvin, No. 12-CV-1381, 2013 WL 6086650, at *6 (N.D.N.Y. Nov. 19, 2013). Plaintiff never claimed disability based on obesity, nor did any of the physicians who examined him diagnose him as obese. However, the record does show that Plaintiff was

obese,[3] and given that Plaintiff had a musculoskeletal impairment in the form of his left ankle injury, the ALJ should have considered the effects of Plaintiff's obesity, if any, in conjunction with Plaintiff's ankle impairment at the various steps of the evaluation process. See Kelly v. Astrue, No. 09-CV-1359, 2011 WL 817507, at *7 (N.D.N.Y. Jan. 18, 2011) (remanding to the Commissioner to give "consideration . . . to the effect, if any, of [p]laintiff's obesity on her overall ability to perform basic work activities" notwithstanding that plaintiff did not cite obesity as a limiting impairment), report and recommendation adopted by, 2011 WL 807398 (N.D.N.Y. Mar. 2, 2011); Kazanjian v. Astrue, No. 09-CV-3678, 2010 WL 3394385, at *11 (E.D.N.Y. Aug. 25, 2010) (finding an "inadequate

---

[3] SSR 02-1p describes the medical criteria for the diagnosis of obesity.  It states that "[t]he National Institutes of Health (NIH) established medical criteria for the diagnosis of obesity in its Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults (NIH Publication No. 98-4083, September 1998).  These guidelines classify overweight and obesity in adults according to Body Mass Index (BMI)."  SSR 02-1p.  As the ruling further explains, "BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m2)."  Id.

Here, the record indicates that Plaintiff is five-feet, eight-inches tall and his weight ranged from 280 pounds on July 7, 2008 to 240 pounds on September 9, 2011.  (R. 184, 295.) Consequently, Plaintiff's BMI ranged between 36.5 and 42.6.  NIH's clinical guidelines recognize three levels of obesity: level I includes BMIs of 30.0 to 34.9; level II includes BMIs of 35.0 to 39.9; and level III, termed "extreme" obesity, includes BMIs greater than or equal to 40.0.  SSR 02-1p.  Thus, based on the record, Plaintiff had at times level II and level III obesity.

basis [for the ALJ's finding] that plaintiff was incredible" because, <u>inter alia</u>, the ALJ did not consider plaintiff's obesity as a factor in evaluating the credibility of plaintiff's statement as to the "intensity, persistence, and limiting effects" of her symptoms). Accordingly, on remand, the ALJ should consider the combined impact of Plaintiff's left ankle impairment with his obesity throughout the evaluation process.

<u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's motion is DENIED, Plaintiff's motion is GRANTED, and this action is REMANDED for further proceedings consistent with this Memorandum and Order. The Clerk of the Court is directed to mark this matter CLOSED.


SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Date: September 11, 2014
     Central Islip, New York